Mariner v. Oconto Land Co. 142 Wis. 531.

MARINER and others, Appellants, vs. OCONTO LAND COMPANY, Respondent.

*March 15—April 26, 1910.*

*Public lands: Grant to state for Sturgeon Bay canal: Grant by state: When title passes: Delay in issuance of patents: Taxation: Exemption: Conveyance by canal company: Quitclaim deed: Estoppel:* Stare decisis: *Rule of property.* -

1. The grant of lands to the state by the act of Congress of April 10, 1866, to aid in the construction of the Sturgeon Bay ship canal was, like all the national land-grant acts, a grant *in præsenti*, leaving nothing to be done, after acceptance of the grant, to pass title in trust, except to segregate the lands from the general public domain by due selection and certification.
2. When lands so granted to the state are re-granted by it for the purposes of the trust, the full equitable and beneficial title passes to the grantee of the state as soon as the lands are earned by compliance with the conditions of the grant and the facts in that regard are duly determined, and from that time the lands are subject to the taxing laws of the state, whether the legal title has or has not, in form, passed by the patent from the state or general government.

3. In ch. 105, Laws of 1868 (by which the lands granted to the state by the act of April 10, 1866, were "granted and conferred upon" the Sturgeon Bay and Lake Michigan Ship Canal and Harbor Company), the provision that, upon the filing of a certificate by the governor of the completion of the work, the lands "shall be patented . . . to said company, which shall stand seized and possessed of all said lands as fully as the state can convey the same, and free from any tax for the term of ten years, if so long held by the said company," did not operate to postpone until actual issuance of the patents the passing of full beneficial ownership of the lands with right of disposal, or the commencement of the specified period of exemption from taxation. *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 579, 133 U. S. 496, followed.

4. After the canal company had acquired such beneficial ownership with right of disposal, a deed by which it granted, bargained, sold, assigned, and quitclaimed all its right, title, and interest in and to such lands, and all right, title, and interest which it then had or might thereafter acquire to select and have patented to it (should its full title fail) other lands in lieu thereof, conveyed, not merely a right to obtain the lands, but the full equitable title and beneficial interest possessed by the company; and such conveyance terminated the exemption of the lands from taxation under the act of 1868.

5. No tax can be imposed on lands while they remain the property of the United States, or on lands granted by the United States to the state in trust for works of internal improvement as to which the trust has not been executed; but when the trust has been executed and the lands fully earned they may be taxed, although the patents therefor, which are due, have not been issued. *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, distinguished.

6. The doctrine that when granted lands have been earned and all conditions precedent to the issuance of patents have been satisfied the title for all practical purposes, including that of taxation, passes into the field of private ownership, having been declared by this court twenty-five years ago, affirmed by the federal supreme court, and again recently declared by this court, has become a rule of property and is not now open to discussion.

7. Refusal by the state for a number of years to issue patents for certain lands granted by it to the Sturgeon Bay canal company, on the ground that such lands did not pass to the state under the grant made to it by the federal government in aid of said canal, but were owned by the state under a different grant, did not create an estoppel *in pais* precluding the state from treating the lands as subject to taxation during that time.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action to quiet title.

The cause involved the validity of certain tax deeds. Such validity turned on whether the lands were subject to taxation for the years the taxes on which the deeds were based were levied. The lands and others having been granted to the state by the general government in trust for a particular purpose and duly selected and segregated from the public domain, a contract to execute such purpose was made by it with the Sturgeon Bay and Lake Michigan Ship Canal and Harbor Company, under authority of ch. 105, Laws of 1868. Such purpose was to secure the construction of a breakwater and harbor at the head of Sturgeon Bay, in the county of Door, to connect the waters of Green Bay with Lake Michigan. Pursuant to such contract it was provided that upon the completion of specified portions of the work to the satisfaction of the governor he should certify the same to the company, specifying the proportion of lands earned to the company, and deposit a copy of his certificate in the office of the secretary of state, and thereupon that the commissioners of school and university lands should patent to the company such portion as selected by it and that it should be privileged to sell and convey the same, and upon the entire work contemplated being completed and duly certified to the governor and approved by him, he should certify the fact to the company and deposit a copy of his certificate in the office of the secretary of state and then that the remainder of the granted lands should be patented to the company by such commissioners with effect, as follows:

"Which shall stand seized and possessed of all said lands as fully as the state can convey the same, and free from any tax for the term of ten years, if so long held by the said company, and the said company shall use all due diligence in disposing of said lands at a fair and equitable price, and they

shall not be held by the said company for speculation, and when sold by said company they shall be subject to taxation: *provided,* that previous to the issue of a patent therefor or for any of said lands, said company shall reimburse the state for all expenses incurred on account of the same."

All conditions precedent to finally closing up the relations between the state and the company by issuance of the last patents were satisfied December 5, 1881, and the company was then and continuously thereafter entitled to have such patents issued to it or its grantees, till they were finally issued. Nevertheless patents to 2,000 acres of lands, including the particular lands in dispute, were not issued till June, 1901, because of an unfounded adverse claim of the state that they belonged to it under the federal swamp land grant, notwithstanding they had been segregated from the public domain and certified to it for the particular purpose covered by the contract aforesaid. In the meantime the company, subsequent to final completion of its work and it becoming entitled to patents as aforesaid, sold said lands, with all others earned by it under the contract and patented to but undisposed of by it, to *Ephraim Mariner* and Guido Pfister, as trustees, conveying the patented lands by warranty deed, and the lands to which those in suit belonged by quitclaim deed, as indicated by the following language of the conveyance:

"Has granted, bargained, sold and assigned and quitclaimed and by these presents does grant, bargain, sell, assign and quitclaim unto the said party of the second part, all its right, title and interest in and to the following described real estate and all its right, title and interest which it now has, or may thereafter acquire, to select and have patented to it (should the title to said party of the first part fail) other lands of the United States in lieu thereof. . . ."

Prior to the issuance of patents to the lands the full equitable title thereto and right to receive such patents became vested in plaintiffs and the patents were issued accordingly June 7, 1901. During the period intervening between

the time when said lands were earned by the company, as aforesaid, and June 7th, patents therefor were wrongfully withheld by the state by reason of its unfounded but good-faith claim before indicated.

For the purpose of taxation the quitclaimed lands were treated as subject thereto from and after the time they were deeded by the canal company as aforesaid. The taxes levied thereon for the years 1882, 1883, 1885, and 1887 were not paid and in due course and form tax titles of such lands, based on the taxes for such years, were perfected and by conveyances in due form vested of record in the defendant. In the situation stated,—the patent title to the lands in appellants and acquired subsequent to the levy of the taxes which were imposed thereon after the full equitable title had passed under the contract, as aforesaid, and the tax titles, as indicated, in the respondent, and circumstances existing rendering appellants competent to test the validity of such tax titles by an action against respondent to quiet title,—this suit was commenced. The trial court held as matter of law that the lands were taxable for the years the taxes were levied, upon which the tax titles were based, and that respondent was the owner of the lands by virtue of such titles, and rendered judgment in its favor accordingly.

For the appellants there was a brief by *Hooper & Hooper,* and separate briefs by *E. Mariner,* of counsel, and oral argument by *Moses Hooper.*

For the respondent there were briefs by *Greene, Fairchild, North & Parker,* and oral argument by *J. R. North.*

MARSHALL, J.  It is conceded that the federal act was a grant of lands *in præsenti,* the language thereof being: "There be and hereby is granted to the state," etc., leaving nothing to be done to pass the title, in trust, except to segregate the lands from the general public domain by due selection and certification, which was done. Thus far the law is

firmly settled by many federal and state decisions.   *Wis.
Cent. R. Co. v. Price Co.* 133 U. S. 496, 10 Sup. Ct. 341;
*St. Paul & P. R. Co. v. N. P. R. Co.* 139 U. S. 1, 11 Sup.
Ct. 389; *U. S. v. S. P. R. Co.* 146 U. S. 570, 13 Sup. Ct.
152; *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 579, 26 N. W.
93; *Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 134 Wis.
197, 114 N. W. 511.   In these and many other decisions it
is held expressly, or in effect, that the intent of all the na-
tional land grant acts, of which the one in question is a type,
was that upon acceptance of the grant the title should pass
to the grantee as of the date of the act, subject only to excep-
tions as to claims to lands accruing subsequent thereto and
before identification of the particular lands granted.

It is just as firmly established by the decision of this court
in *Wis. Cent. R. Co. v. Price Co., supra,* affirmed in the fed-
eral supreme court, 133 U. S. 496, 10 Sup. Ct. 341, that the
title to granted lands, regranted for the purpose of the trust,
as in this case, passes to the grantee as soon as earned and the
fact in that regard duly determined, and from such date the
lands are subject to the taxing laws of the state whether the
legal title shall have, in form, passed by patent from the state
or general government or not; that is, upon all conditions pre-
cedent to passing of the legal title in the formal way being
satisfied, leaving nothing to be done by the state or general
government but to perform the contract obligations on its
part, at least the full equitable and beneficial title to the
lands passes to the ultimate grantee and such grantee thereby
becomes, to all intents and purposes, the owner thereof, and
particularly for purposes of taxation.

The doctrine, as stated, was very recently affirmed by this
court in *Chicago, St. P., M. & O. R. Co. v. Douglas Co.,
supra,* as learned counsel for appellants appreciate, but it is
insisted that the language of the act of 1868, "said lands
shall be patented," etc., "to the said company which shall
stand seized and possessed of all said lands as fully as the

state can convey the same, and free from any tax for the term of ten years, if so long held by the said company," negatives the idea that the legislature intended to make a grant of lands *in præsenti,* notwithstanding it used language in the granting clause substantially the same as that, over and over again, held to have such effect; that the language, "said lands shall be patented" "to the said company," followed by the words "which shall stand seized and possessed," etc., "free from any tax for the term of ten years, if so long held," etc., not only indicates an intent not to make a grant *in præsenti,* as had commonly been done, but to postpone the passing of the title for the purpose of taxation till conveyance of the legal title by patent, and, contingently, for a specified period thereafter, and that the words "so long held" refer to the words "shall be patented," etc., and mean "so long held" under the patent title.

The contention stated, supported as it is by able arguments of counsel, might cause considerable hesitation, at least, before reaching a conclusion in the negative, if it were not for the fact that the precise question, as it seems to us, was considered and decided in the *Wisconsin Central Case.* True, ch. 314, P. & L. Laws of 1866, considered in such case, did not contain the precise language depended upon by counsel for appellants in this case, but it did in effect. It provided that the railroad company should be entitled to the lands in portions applicable to specific sections of the road, as fast as such sections were respectively completed and the fact duly certified, but it contemplated certification to the secretary of the interior and patenting of the lands by the general government, direct to the railway company in accordance with the federal act, and provided that the title to the lands should not vest in the company sooner than lands might be sold, as provided in the act of Congress, but further provided, 'that the company should be capable in law of taking and holding any of the granted lands which should be conveyed to it by

the grantor by deed or operation of law, with full power of disposition of any title it might presently have or subsequently acquire.'

Referring to the federal act (Act of May 5, 1864, ch. 80, 13 U. S. Stats. at Large, 66) which was thus, in effect, incorporated into the state grant to the railway company, we find this language used, quoted in the *Wisconsin Central Case* as fixing the status of the company to earned but unpatented lands:

"Whenever the companies to which this grant is made, or to which the same may be transferred, shall have completed twenty consecutive miles of any portion of said railroads . . . patents shall issue, conveying the said right and title to said lands to the said company entitled thereto. . . . The said lands hereby granted shall, when patented . . . be subject to the disposal of the companies respectively entitled thereto," etc.

This court held, and the federal supreme court affirmed, that ownership of the granted lands was not postponed to the patenting thereof, but that ownership of the full equitable and beneficial interest, at least, vested in the company as soon as the lands were earned and it was entitled to patents; that neither its right to full ownership nor the public right of taxation could be postponed by neglect to obtain the patents or refusal to issue them; that from the time patents were due the company, for all practical purposes, the company owned the lands; using the court's language, "the mere fact that the lands . . . were not held under patents from the United States did not prevent their being subject to taxation." Thus, in effect, holding that the language in the act of Congress, "said lands hereby granted shall, when patented," etc., "be subject to the disposal of the companies," etc., "respectively entitled thereto for the purpose aforesaid and no other," meant no more than that, neither before nor after patenting, should the companies have any disposable interest in the lands inconsistent with the purposes of the grant.

The contention was made, on the side of nontaxability of the lands, that the fair meaning of the granting act was that the beneficiary company should have no right to sell and dispose of the lands until it received patents, hence should not possess the lands till then and therefore could not, till then, have a taxable interest therein. Such contention utterly failed, as indicated, as one based on an unwarranted construction of the granting act.

True, the act in question contains, following the provision as to the duty of the commissioners of school and university lands, in a specified contingency, to issue the final patents, this language which appellants' counsel regard as of controlling significance: "which [the company] shall stand seized and possessed of all said lands as fully as the state can convey the same," not found in the national act of 1864 involved in the *Wisconsin Central Case*. But such language does not seem to indicate a legislative idea to postpone vesting of a disposable interest in the lands in the company till patenting thereof. As between that phrasing and the one in the national act, to the effect that the lands, when patented, shall be subject to disposal by the beneficiary, the latter much more than the former would so indicate. If the one does not, as this court and the federal supreme court has held, logically the other does not.

It will be noted that the language of the state act of 1868 rather negatives the idea that there was any legislative purpose to prevent the canal company from becoming possessed of the lands prior to the formal conveyance by patent. It seems to contemplate, at least, passing of the full beneficial interest in the lands to the company, by operation of law, upon all conditions precedent to patenting being satisfied, leaving the state the duty of making the formal transfer more as matter of evidence than actual conveyance of title, so words were used to the effect that the making and delivery of the patents shall give the company the status of being

seized of the land as fully as the state can convey the same. That suggests existence of seisin and possession of the lands by the company at the time of patenting, as regards all but the formal conveyance creating evidence of what had already been, to all intents, accomplished by force of the granting clause of the act, viz.: "said lands are hereby granted and conferred upon," etc., in connection with full performance of all conditions requisite to full seisin and possession.

It follows, necessarily, that the previous decision of this court rules both the proposition as to whether the contract with the canal company postponed its acquiring the status of a holder of the lands within the meaning of the act, and the one as to its competency of disposing thereof with due diligence within such meaning, rendering the lands taxable within the ten-year period of exemption, in favor of respondent.

In the foregoing we have not thought best to deal with rules for interpretation and construction, therefore we have not entered the field covered by the learned and interesting argument of counsel for appellants. If the proposition we have discussed was a new one, or if it was so far open to construction as to fairly admit of reading out of the act of 1868 a different situation than was presented in the *Wisconsin Central Case* under the act of 1866 and the national act of 1864, we could well give far greater significance to counsel's analysis of the act in question in the light of the judicial rules suggested. But when the legislative purpose of an act is evident and its effectuation does not lead to any absurd result, there is no uncertainty, hence no room for construction. As has often been said, we do not enter the field of construction till we pass the boundary between the field of certainty and that of uncertainty. Granting that, if the act in question could be viewed from an original standpoint, we would find ambiguity calling for construction or interpretation, or both, from the viewpoint of the decision in the *Wisconsin*

*Central Case,* which has been several times followed here and affirmed, as we have seen, and also by the highest court in the land, there is no ambiguity.

It is suggested that the contingency of the company ceasing to hold the lands, requisite to rendering them taxable, had not occurred prior to the levy of the taxes in question, therefore, they were not then taxable; that the company merely parted to the purchasers at the sale, *Mariner* and Pfister, its right to obtain the lands. That seems to be sufficiently answered by what has been said. The company certainly parted, at such sale, with all the interest it had in the lands. That interest, as we understand, was really conceded on the argument to be the full equitable title and beneficial interest as it was in fact. Moreover, the conveyance was not, as we view it, a mere power to ask for and obtain patents, but was a plain deed of bargain and sale but without covenants.

It is suggested that no taxes could legally have been imposed on the lands so long as the United States retained an interest which would be destroyed by taking the lands for taxes. The answer to that is that the United States had no such interest nor any interest whatever in the lands when the taxes were imposed. The whole title had passed to the state and practically from the state to the canal company, leaving only the duty of the state to properly evidence the fact by a formal patent, before the taxes were levied, as has been shown. So the principle suggested, granting its soundness for the purposes of the discussion, does not apply as to any interest of either the United States or the state.

The foregoing sufficiently answers the contention of the learned counsel for appellants, in their reply brief, that the state was prohibited from taxing the lands during the period the taxes in question were imposed, by sec. 2, art. II, of the constitution, which provides that "no tax shall be imposed on land the property of the United States. . . ." The lands here, prior to the imposition of such taxes, had ceased to be

property of the United States, as held in similar circumstances in the *Price County Case.*

We do not overlook the language and decision of this court in *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 8 N. W. 833. It was there held that "no tax can be imposed on lands while they remain the property of the United States." We reaffirm that doctrine. It was further held that, "No tax can be imposed on lands granted by the United States to the state in trust for works of internal improvement, and as to which the trust has not been executed." We also reaffirm that doctrine, but it does not militate against the taxes in question because, prior to their imposition, the trust had been fully executed.

We note fully this language in the opinion in the *Wisconsin Central Case,* cited with confidence to our attention in the reply brief, viz.:

"As fast as such lands have been earned by the railroad company under such grants, *and as the state* and United States have each parted with all right, title and interest therein to the company by patents regularly issued, the same become relieved, *pro tanto,* of the trust implied in the grant, and subject to the legislative will in the imposition of taxes." [*Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 95.]

The court in using such language was speaking to the facts of the case before it. The legislation, state and national, as in this case and in the *Price County Case,* contemplated issuance of patents to the grantee of the state, as evidence that the lands had been earned. The legislative act in that case, as in this and the *Price County Case,* contained words of grant *in præsenti,* subject to performance of the work of internal improvement the lands were designed to promote. The patents had actually been issued. Whether, notwithstanding the lands had been fully earned, rendering it obligatory upon the state to issue the patents, it had wrongfully neglected or refused to perform that duty, the power of taxa-

tion would thereby have been suspended, was not in the case. The court observed:

"There is no dispute but that the lands in question had, prior to the levying of the taxes in question, been earned by the plaintiff by fully completing the requisite section of its road, and that patents had been issued to the plaintiff, as required, thereby conveying to it the right and title to the lands in question."

Whether such right and title passed independently of the mere issuance of patents, so as to render the lands subject to taxation, but for the exemption act, the constitutionality of which was the main controversy, was not in issue. That very question, as we have seen, was, later, in the *Price County Case* involving lands granted under the same legislation, the vital one in issue and was decided in the affirmative, and such decision was affirmed in the federal supreme court, as before indicated, and the same doctrine was again declared in the recent case of *Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 134 Wis. 197, 114 N. W. 511, as we have seen. Whether such doctrine, from an original standpoint, is logical or not, it has been the law of the state too long to be now open to discussion. It was declared a quarter of a century ago. It has the sanction of this court, of other state supreme courts, and of the highest court in the land. It is a rule of property and cannot now be departed from. Every reason now urged against it has passed in review, over and over again, with the result that, upon granted lands, as in this case, being earned and all conditions precedent to the issuance of patents being satisfied, the title for all practical purposes, including that of taxation, passes into the field of private ownership.

Counsel criticise the decisions of the Minnesota court holding that, under such legislation as that in question, the exemption from taxation terminates when the full equitable title passes from the state, notwithstanding there has not been any formal conveyance, thus construing the term "convey-

ance" in such legislation as satisfied when the full beneficial interest shall have passed. It is conceded that the decision of the Minnesota court was affirmed by the federal supreme court, but suggested that the reasons given for its conclusion are illogical and should not be followed, but rather the doctrine of *Wis. Cent. R. Co. v. Taylor Co., supra,* should control. The difficulty with that is that the Minnesota court only followed earlier decisions elsewhere on the same subject, they are not out of harmony with anything decided in the *Wisconsin Central Case,* this court reasoned on the same line in the *Price County Case,* and the federal supreme court in *Winona & St. P. L. Co. v. Minnesota,* 159 U. S. 526, 16 Sup. Ct. 83, only applied that which had been theretofore repeatedly declared to be the law, and notably in *Wis. Cent. R. Co. v. Price Co.,* involving the same legislation which this court discussed in *Wis. Cent. R. Co. v. Taylor Co., supra.*

In the later case the federal supreme court said, referring to previous decisions:

"This court held, as to lands purchased from the United States, that after the full equitable title had passed and the government simply held the naked legal title as trustee for the purchaser, they became subject to taxation. We concur in these views." [159 U. S. 530, 531.]

The court further reasoned that exemption statutes should be strictly construed in favor of the right of taxation and that, in legislation of the character of that under consideration, the term "conveyance" or "convey" should be held satisfied by the transition by operation of law of the full equitable title, unless a clear intent to the contrary appeared.

So it is too late now to seriously consider whether the reasoning of the Minnesota and other courts and the federal supreme court is or is not logical. It is the settled law of this state, as we have seen, as to legislation of the kind under consideration, even in case of its being so phrased as to entitle the person, or persons, or corporation, or corporations, earn-

Mariner v. Oconto Land Co. 142 Wis. 531.

ing the granted lands, to a formal conveyance by patent. Neither the neglect of those earning the lands to obtain the patents, or of the United States or state to issue patents, affects the taxability of the land from and after the patents are due.

It is somewhat uncertain, from the original printed argument, whether counsel for appellants maintain that the lands were not subject to taxation because, since the state, during all the years for which the taxes were levied, was insisting that it owned the lands under the swamp land grant; that they did not pass to the state under the grant in question and, upon that pretense, withheld from the canal company and its grantees the patents which should have been given, it and all state agencies and all persons claiming under the acts of such agencies are estopped from successfully claiming that the canal company's grantee, in fact, held the lands so as to be subject to taxation under the act of 1868. Counsel seemed, originally, to suggest the point rather as a reason for construing the act strongly in favor of appellants than as an estoppel, *in pais,* affecting the taxability of the lands. Counsel, in a carefully prepared supplemental brief, filed by consent of respondent's counsel, and duly considered, now seem to definitely insist upon the circumstances mentioned as creating an estoppel *in pais,* as well as significant in the field of construction. The latter has been sufficiently met. The former, it would seem, is sufficiently met by the logic of the situation.

The appellants, by the very doctrine they invoke, could not well insist that they in fact owned the lands, to all intents and purposes, only wanting the patent evidence thereof, which is really the effect of their contention; and at the same time insist that they were exempt from taxation because of the formality of issuing patents not having been satisfied. However, it seems that we need not discuss the matter at length unless we are prepared to overrule the decision in *Chi-*

*cago, St. P., M. & O. R. Co. v. Douglas Co.* 134 Wis. 197, 114 N. W. 511, and that in *Wis. Cent. R. Co. v. Price Co.* as well, wherein the precise question was decided, which we see no reason for doing as an original matter, and which we are precluded from doing, since the doctrine there declared has become a rule of property.

Some questions are raised, incidentally, in the briefs of counsel, which we have not specifically mentioned, but it is thought that what has been said sufficiently covers the ground traversed by counsel and leads to the logical conclusion that the judgment must be affirmed. Really, as frankly confessed by the able counsel who presented the case orally for appellants, the appeal does not present any new question for consideration, except whether peculiar wording of the act of 1868, conferring the lands in question on the canal company, takes it out of the rule of *Wis. Cent. R. Co. v. Price Co.* and similar cases—unless, the questions decided in those cases may be regarded as open for re-examination.

*By the Court.*—The judgment is affirmed.