(May 21, 1913.)

## GLENN R. BOTHWELL, Appellant, v. BINGHAM COUNTY, Respondent.

[132 Pac. 972.]

CAREY ACT LANDS—WHEN TAXABLE—WHEN TITLE PASSES—STATE AS TRUSTEE.

1. Under the Carey act (28 Stats. at Large, p. 422), and amendment thereto (29 Stats. at Large, p. 435), the government issues its patent to the state for the segregated lands which it is shown that provision has been made for supplying sufficient water for their irrigation and reclamation, and the state holds such title in

trust for the settlers and purchasers who settle upon, cultivate and improve the land in conformity with the Carey act and the state statutes in relation thereto.

2. Under the statute of this state (sec. 1653, Rev. Codes), as the same was in force and effect on January 9, 1911, a tax lien attached against all taxable property within the state at noon on that day, and where patent issued on that date from the general government to the state in trust for segregated Carey act lands, and the purchaser and claimant to a portion of such lands had prior to that date settled upon, cultivated and reclaimed the land in conformity with the acts of Congress and the statutes of the state, and had made his final proofs and received a final certificate from the register of the state land board, such land was taxable and subject to the tax lien attaching on that date for the year 1911.

3. The rule generally recognized by the courts with reference to the taxation of lands for which patent has not yet issued is that when payment in full has been made and settlement and improvement has been had and final proof thereof has been made, and the proper authorities of the Interior Department have accepted the proof and issued a final receipt to that effect, it operates to transfer such an equitable estate in the lands to the purchaser and settler as to immediately render the land liable to taxation, although the legal title is still held by the United States.

4. The general rule which has been applied to the taxation of a homestead, pre-emption and other lands acquired from the United States under the public land laws is applicable to the case of lands acquired under the Carey act.

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. James M. Stevens, Judge.

Action to enjoin the collection of taxes levied against certain lands. Judgment for the defendant. Plaintiff appeals. *Affirmed.*

W. H. Wilkins and W. A. Lee, for Appellant.

The federal Carey act expressly granted to the state the right to create a lien for the ''necessary expenses of reclamation.'' Such specific expression of a direct grant prohibits the state from imposing any other lien whatever upon said lands. (*Johnson v. So. Pacific Co.*, 117 Fed. 462, 54 C. C. A.

508; *United States v. Thurston Co.*, 143 Fed. 287, 74 C. C. A. 425.)

Lands segregated under the federal Carey act are the "instrumentalities" through which the object of the federal government was to be attained. (*United States v. Thurston Co., supra; Tucker v. Ferguson*, 22 Wall. 527, 22 L. ed. 805; *Van Brocklin v. Anderson*, 117 U. S. 151, 6 Sup. Ct. 670, 29 L. ed. 845; *McCullough v. Maryland*, 4 Wheat. 316, 4 L. ed. 579; *Old National Bank v. County Court*, 58 W. Va. 559, 52 S. E. 494, 6 Ann. Cas. 115, 3 L. R. A., N. S., 584; *United States v. Rickett*, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. ed. 537; *United States v. Des Moines M. N. & R. Co.*, 142 U. S. 510, 12 Sup. Ct. 308, 35 L. ed. 1106.)

The state could not tax these lands while the title remained in the United States, nor while she held them as trustee of the United States, which in view of the law was the same thing. (*Tucker v. Ferguson, supra; Van Brocklin v. Anderson, supra; Wisconsin Central R. Co. v. Taylor County*, 52 Wis. 37, 8 N. W. 833; *Denniston v. Unknown Owners*, 29 Wis. 351; *Sioux City R. Co. v. County of Osceola*, 43 Iowa, 318; *West Wis. R. Co. v. Supervisors*, 93 U. S. 595, 23 L. ed. 814.)

Public lands cannot be taxed while the title to the same remains vested in the state of Idaho. The state was prohibited from imposing the tax complained of because in this state "the passing of the fee determines the right to tax." (Idaho Const., art. 7, sec. 4; Idaho Rev. Codes, secs. 1586, 1644; *Salisbury v. Lane*, 7 Ida. 373, 63 Pac. 383; *State v. Stephenson*, 6 Ida. 367, 55 Pac. 886; *Inland Lumber Co. v. Thompson*, 11 Ida. 508, 114 Am. St. 274, 83 Pac. 933, 7 Ann. Cas. 862.)

J. E. Good, County Attorney, and Hansbrough & Gagon, for Respondent.

The appellant was on January 9, 1911, possessed of the beneficial and an indefeasible title to his lands, because on said date the United States parted with all its right, title and interest in said lands, and having prior thereto performed all of the conditions required of him, by both the state and

federal government, to entitle him to a patent. (*Wisconsin Central R. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341, 33 L. ed. 687; *Herrick v. Sargent,* 140 Iowa, 590, 132 Am. St. 281, 117 N. W. 751; *County of Polk v. Hunter (State v. Hunter),* 42 Minn. 312, 44 N. W. 201; *Northern Pac. Ry. Co. v. Myers,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564; *United States v. Des Moines Nav. Ry. Co.,* 142 U. S. 510, 12 Sup. Ct. 308, 35 L. ed. 1106; *Chicago M. & St. P. Ry. Co. v. Hemenway,* 117 Iowa, 598, 91 N. W. 910.)

Government land, as to which all conditions precedent to transfer of title have been performed, is subject to taxation to the purchaser, though the legal title still remains in the government. (*United States v. Southern Oregon Co.,* 196 Fed. 423.)

When payment of the full consideration for public lands has been made, and the receiver of the local land office issues a final receipt, it operates to transfer such an equitable estate in the premises as immediately to render them liable to taxation, though the United States holds the legal title until a patent is executed. (*Johnson v. Crook County,* 53 Or. 329, 133 Am. St. 834, 100 Pac. 294; *Mariner v. Oconto Land Co.,* 142 Wis. 531, 126 N. W. 34; *State v. Itasca Lumber Co.,* 100 Minn. 355, 111 N. W. 276.)

AILSHIE, C. J.—This action involves the right of the county to collect taxes against lands taken under what is commonly known as the Carey act. Under the provisions of the Carey act (28 Stats. at Large, p. 422, 6 Fed. Stats. Ann., p. 397, Comp. Stats. 1901, p. 1554), the Secretary of the Interior, with the approval of the President, was authorized to contract with a state wherein desert land was situated, binding the United States to donate and patent to the state free of costs such desert lands not exceeding one million acres within the state as the state might cause to be "irrigated, reclaimed, occupied, and not less than twenty acres of each 160-acre tract, cultivated by actual settlers within ten years next after the passage of the act," etc. It was further provided by that act that "as fast as any state may furnish

satisfactory proof, according to such rules and regulations as may be prescribed by the Secretary of the Interior, that any of said lands are irrigated, reclaimed and occupied by actual settlers, patents shall be issued to the state or its assigns for said lands so reclaimed and settled; providing that said states shall not sell or dispose of more than one hundred and sixty acres of said lands to any one person, and any surplus money derived by any state from the sale of said lands in excess of the cost of their reclamation, shall be held as a trust fund for and be applied to the reclamation of other desert lands in such state.'' By a subsequent act (29 Stats. at Large, 434, 6 Fed. Stats. Ann., p. 398, Comp. Stats. 1901, p. 1556), the state was authorized to create a lien on such lands ''for the actual cost and necessary expense of reclamation,'' but for no other purpose.

In pursuance of the provisions of the Carey act, the legislature enacted chap. 5, title 9 of the Revised Codes of this state, comprising secs. 1613 to 1634, inclusive, accepting the provisions of the act of Congress and providing for the state entering into contracts with individuals, associations or corporations, for the construction of irrigation works, and providing the means for reclaiming desert land within the purview and intention of the Carey act. Under and in pursuance of the provisions of the Carey act, and chap. 5, title 9 of the Rev. Codes of this state, and on the 19th day of July, 1899, the governor of Idaho entered into an agreement with the Secretary of the Interior for the withdrawal of a tract of land aggregating about 50,000 acres, of which the parcel of land taxed in this case was a part. The state thereafter entered into a contract with the American Falls Canal and Power Co., a corporation, existing under the laws of the state of Utah, by which this corporation contracted and agreed to construct a canal from a point on Snake river through this tract of land for the purpose of irrigating and reclaiming the same. The canal company thereafter constructed a canal known as the American Falls Canal, and represented that the canal was completed and that water had been furnished for the irrigation and reclamation of the

greater part of the lands segregated, including the land belonging to the appellant herein. Upon this representation being made to the state board of land commissioners and the board being satisfied with such representation, application was made by the state to the Secretary of the Interior for the issuance of patent to the state for the lands described in the previous contract of segregation. In support of this application the state offered evidence of the irrigation and reclamation of the lands described in the list and of the completion of the canal system as required by law. The Secretary of the Interior held that these proofs were insufficient and that sufficient water had not been provided for reclamation of these lands, and accordingly rejected the proofs and denied the application for patent and so notified the state, and also advised the state that the segregation would be forfeited and all of the tract of land would be restored to the public domain, for the reason, as alleged by the Secretary, that the state had not complied with its contract in the matter of reclamation of the lands. Thereupon the state asked leave to renew its application for patent and submitted further proofs showing that additional work had been done toward increasing the capacity of the canal and ditches, and securing a more ample supply of water. The Secretary of the Interior thereafter heard and considered this application, and on December 21, 1910, took favorable action thereon and clear-listed the entire tract of something like 50,000 acres, and on the latter date the Secretary directed the issuance of patent from the United States to the state of Idaho. In accordance with this order, patent thereafter and on January 9, 1911, issued from the United States to the state of Idaho for something like 50,000 acres embracing the tract of land in question. Appellant entered upon this land under a contract from the state, as required by the state law and the rules and regulations of the state board of land commissioners, and subsequently improved and reclaimed the land, in accordance with the laws of the state and the rules and regulations of the land board, and paid to the state the required purchase price authorized under the act of Congress and the state statute. Thereafter and

on June 25, 1909, appellant made all proofs of settlement, improvement and residence, as required by law and the rules and regulations of the state board of land commissioners, and received a final certificate to that effect, signed by the register of the land board under the seal of the board. Nothing further was left for the entryman, appellant, to do in compliance with the act of Congress and the statutes of the state in order to entitle him to patent for this tract of land, and nothing further was done by him in the way of making further or other proof, and thereafter and on the 10th day of February, 1911, the state issued to him its patent for this land. The assessor of Bingham county, the county within which this land is situated, assessed the land as belonging to the appellant for state and county purposes for the year 1911, and this action was instituted for the purpose of enjoining the collection of such tax, on the ground that the land was not taxable for that year.

Under the statute of this state, sec. 1653, Rev. Codes, a tax lien attached against all taxable property within the state at noon, the second Monday in January, 1911. The second Monday of January, 1911, was January 9th, and this is the same day on which the patent from the United States to the state of Idaho issued for this body of land. On that day the legal title passed from the United States to the state of Idaho and was held in trust by the state of Idaho for the use and benefit of the settlers on the several tracts of land or those who might subsequently settle thereon and comply with the law in the matter of settlement, cultivation and reclamation. On that day the equitable title to this land was in the appellant, for the reason that he had then complied with all the requirements of the statutes, both state and federal, with reference to acquiring title to such lands. He had made his proofs and received a final receipt, certifying to such fact, which receipt was approved by the state board of land commissioners. On January 9, 1911, the day on which this tax attached as a lien, nothing remained to perfect the appellant's title to the land except the issuance of patent by the United States to the state of Idaho, and the issuance of patent by the state of Idaho to

the appellant.   On that day patent did issue from the United States to the state.

The rule which has been generally recognized by the courts with reference to the taxation of lands for which patent has not yet issued is, that when payment in full has been made and settlement and improvement have been had and final proof thereof has been made and the proper authorities of the Interior Department have accepted the proofs and issued a final receipt to that effect, it operates to transfer such an equitable estate in the lands as to immediately render the land liable to taxation, although the legal title is still held by the United States.   (*Hussman v. Durham*, 165 U. S. 144, 17 Sup. Ct. 253, 41 L. ed. 664; *Kansas-Pacific Ry. Co. v. Prescott*, 16 Wall. 603, 21 L. ed. 373; *United States v. Southern Oregon Co.*, 196 Fed. 423; *Johnson v. Crook County*, 53 Or. 329, 133 Am. St. 834, 100 Pac. 294; *Mariner v. Oconto Land Co.*, 142 Wis. 531, 126 N. W. 34.)   No case has been called to our attention and, so far as we are advised, there is no case reported dealing with the question of taxation of lands segregated under the Carey act.   It seems to us, however, that the general rule which has been applied to the taxation of homesteads, pre-emptions, timber claims and other lands acquired from the United States under the public land laws is applicable to the case at bar.   In this kind of case the passing of title is a little more complicated, but we fail to see wherein that question can affect the purchaser's title or the right of the state to tax the land as soon as title has been earned by the settler and purchaser.   Under the Carey act, the United States deals directly with the state and issues its patent to the state rather than dealing with each individual settler on the minor subdivisions, and the state acts as trustee for the purpose of taking proofs and determining their sufficiency and passing title to the settler.   The presumption is that the state will require such proofs as comply with both the act of Congress and the statutes of the state.   The acceptance of proof and the issuance of a final receipt by the state board of land commissioners raises the presumption, and indeed constitutes proof as against the owner for taxing purposes, that

the settler and claimant has complied with the law and earned the title to the land. If the homestead of a man who has received only a final receiver's receipt for the same is immediately taxable, certainly the Carey act settler who has received from the state a final receipt and has paid the purchase price is liable to have his land immediately taxed as the equitable owner thereof.

*Mariner v. Oconto Land Co.*, 142 Wis. 531, 126 N. W. 34, is somewhat in point here, for the reason that it deals with the passing of title through the medium of the state as a trustee for a special use. The holding of the court is set forth in the third paragraph of the syllabus as follows:

"Title to public land granted to the state for a particular purpose, and regranted by the state for the purpose of the trust, passes to the grantee as soon as it is earned, and that fact is duly determined, and from such date the lands are subject to the taxing laws of the state, whether the legal title shall have in form passed by patent from the state or general government or not."

In *United States v. Southern Oregon Co.*, 196 Fed. 423, Judge Wolverton, in considering the right of certain counties to collect a tax on lands granted for state wagon road purposes said:

"Where, however, the government has parted with title to its lands by patent, the case would be an exceptional one where such lands were not taxable to the holder of the title under the patent. At least the taxes could not be avoided on the ground that the title was in the United States. Even under an exception to the general rule, the possession of the legal title by the government does not determine the fact and the right of ownership.

"The exception is where Congress has prescribed the conditions upon which portions of the domain may be alienated, and provided that, upon the performance of the conditions, a patent shall issue to the purchaser. When all such conditions are complied with, the land alienated being distinctly defined and it only remaining for the government to issue its patent, the purchaser becomes the equitable, and will be treated as

the beneficial, owner of the land, and the government will be regarded as holding merely the legal title. In such a case the land is taxable by state authority to the purchaser, notwithstanding the legal title yet rests with the government.''

A similar position was taken by the supreme court of Oregon in *Johnson v. Crook County,* 53 Or. 329, 133 Am. St. 834, 100 Pac. 294.

The fact that the government might, prior to passing of title from the state to the settler, revoke its patent to the state or institute proceedings for its cancelation can make no difference with the question before us. The government may, and frequently does, cause the cancelation of patents to homesteads and timber claims, but the fact that these things sometimes happen does not affect the right of the state to tax the land as soon as title passes. The effect a subsequent cancelation has on the particular tract and the state's right to thereafter sell that tract for such tax is another question, and is one with which we are not here confronted.

The judgment should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan and Stewart, JJ., concur.