(April 22, 1925.)

E. H. LENEY et al., Respondents, v. TWIN FALLS COUNTY, a Municipal Corporation, and E. L. WARREN, Tax Collector of Said County, Appellants.

[236 Pac. 532.]

CAREY ACT LANDS—ENTRIES UPON—CAREY ACT—FULL COMPLIANCE BY ENTRYMAN AND STATE—PROOF OF—VESTING OF EQUITABLE TITLE—TAXATION—ISSUANCE OF STATE CERTIFICATE—EFFECT—APPROVAL OF PLAN—SEGREGATION OF LANDS—EFFECT.

1. Until an entryman under the Carey Act has done all that is required of him by the state laws, and the state has fully complied with the terms of the act and the rules and regulations of the Department of the Interior, and proof of compliance has been approved by the Secretary of the Interior, there still remains something to be done to divest the government of its beneficial interest in the land, equitable title does not pass, and the land is not subject to taxation.

2. The acquisition of the equitable title is the line between taxability and nontaxability of the lands of an entryman under the Carey Act.

3. The issuance of a state certificate to an entryman upon a Carey Act project does not vest the equitable title in him, since such a certificate only establishes his compliance with state requirements, and does not supply the proof necessary to be made to the Department of the Interior, under the Carey Act, to entitle the state to patent for the benefit of the entryman.

4. The action of the Secretary of the Interior in approving the proposed plan for the irrigation of the lands applied for by the state, and in making the order segregating those lands from the public domain, is not a conclusive determination against the United States that the state is entitled to patent therefor for the benefit of the settlers.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. T. Bailey Lee, Judge.

Action to enjoin the issuance of tax deeds. Judgment for plaintiffs. *Modified and affirmed.*

J. W. Taylor and Bothwell & Chapman, for Appellants.

Respondents having done all that was required of them by the state and federal laws and the rules and regulations of the state to earn title to their lands, which facts are evidenced by the final certificates, were immediately vested with the equitable title to said lands, which were thereby subjected to taxation, irrespective of the fact that the naked legal title remained for a time in the United States. (C. S., secs. 3096, 3097, 3099, 3101; *Bothwell v. Bingham County,* 24 Ida. 125, 132 Pac. 972, 237 U. S. 642, 35 Sup. Ct. 702, 59 L. ed. 1157; *Armstrong v. Jarron,* 21 Ida. 747, 125 Pac. 170; *Indian Cove Irr. Dist. v. Prideaux,* 25 Ida. 112, Ann. Cas. 1916A, 1218, 136 Pac. 618; *Cheney v. Minidoka County,* 26 Ida. 471, 144 Pac. 343; *Lewis v. Christopher,* 30 Ida. 197, 163 Pac. 916; *Bennett v. Twin Falls North Side Land & Water Co.,* 27 Ida. 643, 150 Pac. 336; *Wisconsin Central R. R. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341, 33 L. ed. 687; *Northern Pac. Ry. Co. v. Myers,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564; *Chicago M. & St. P. Ry. Co. v. Hemmenway,* 117 Iowa, 598, 91 N. W. 910; *Johnson v. Crook County,* 53 Or. 329, 133 Am. St. 834, 100 Pac. 294; *Mariner v. Oconto Land Co.,* 142 Wis. 531, 126 N. W. 34; *State v. Itasca Lumber Co.,* 100 Minn. 355, 111 N. W. 276; *Hussman v. Durham,* 165 U. S. 144, 17 Sup. Ct. 253, 41 L. ed. 664; *Kansas Pacific Ry. Co. v. Prescott,* 83 U. S. 603, 21 L. ed. 373; *Myers v. Northern Pac. Ry. Co.,* 83 Fed. 358, 28 C. C. A. 412; *Davis v. Magouan,* 109 Iowa, 308, 80 N. W. 423; *New Orleans Pac. Ry. Co. v. Kelley,* 52 La. 1741, 28 So. 212; *Danforth v. McCook County,* 11 S. D. 258, 74 Am. St. 808, 76 N. W. 940; *Wood v. McCombe,* 37 Colo. 174, 119 Am. St. 269, 86 Pac. 319; *Elder v. Wood,* 208 U. S. 226, 28 Sup. Ct. 263, 52 L. ed. 464; *Cannon v. Hood River Irr. Dist.,* 79 Or. 71, 154 Pac. 397; *United States v. Canyon County* (D. C.), 232 Fed. 985; 37 Cyc. 792, 866, 867, 868; 26 R. C. L. 96, 97.)

The fact that delay occurred in the issuance of patent from the United States to the state, and from the state to

respondents, for said lands, during which time investigation was made by the state and federal government with a view to ascertaining the irrigable and patentable area of this Carey Act project, resulting in the issuance of patent being suspended for a time, in nowise affects the taxable status of respondents' lands after the issuance of final certificate. (*Cheney v. Minidoka County,* 26 Ida. 471, 144 Pac. 343; *Herrick v. Sargent,* 140 Iowa, 590, 132 Am. St. 281, 117 N. W. 751; *County of Polk v. Hunter,* 42 Minn. 312, 44 N. W. 201; *Northern Pac. Ry. Co. v. Myers,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564; *Haumesser v. Chehalis County,* 76 Wash. 570, 136 Pac. 114; *Flood v. Virnig,* 79 Wash. 417, 140 Pac. 333.)

After completely earning the right to patent and being vested with the equitable title to these lands as evidenced by their final certificates transferring to respondents such equitable title and such beneficial interest and estate in said lands as could be sold, encumbered or passed on by inheritance, and after having been in the use and possession of said lands and in the full exercise and enjoyment of these rights, privileges and benefits for years subsequent to their receipt of final certificates, respondents cannot now impeach their title for the purpose of avoiding the payment of taxes. (*Bothwell v. Bingham County, supra; Herrick v. Sargent, supra; Bishop v. O'Brien County,* 144 Iowa, 567, 123 N. W. 351; *United States v. Canyon County, supra.*)

O. C. Hall and T. K. Hackman, for Respondents.

The government issues patent to the state for the segregated land shown to have sufficient water to be reclaimed, and the state holds such title in trust for those who settled upon, cultivated and reclaimed the same.

Carey Act land is taxable when patent issues from the government to the state. (*Bothwell v. Bingham County,* 24 Ida. 125, 132 Pac. 972, 237 U. S. 642, 35 Sup. Ct. 702, 59 L. ed. 1157.)

Whether or not the state has actually furnished an ample supply of water for reclamation of a particular tract in

order to entitle it to patent is a question of fact to be determined by the department. (*Twin Falls Salmon River etc. Co. v. Caldwell*, 242 Fed. 177, 155 C. C. A. 17; *State v. Twin Falls etc. Co.*, 30 Ida. 41, (78), 166 Pac. 220.)

TAYLOR, J.—This action was brought by Leney and some fifteen others to enjoin the issuance of tax deeds by appellant Warren, tax collector, to appellant Twin Falls county, for delinquent taxes levied and assessed for the year 1918. The cause was submitted to the district court upon a stipulation of facts.

It is stipulated that prior to April 30, 1908, the state entered into a contract with the Secretary of the Interior, under the Carey Act, for the reclamation of approximately 60,000 acres of land, which were segregated by the Department, and on April 30, 1908, made a contract with the Twin Falls Salmon River Land & Water Company for their irrigation and reclamation. In June, 1908, respondents, or their predecessors, entered into contracts with the corporation to purchase water rights for their respective lands, all included within that segregation, and have been in possession and control of the lands since that time, by reason of having filed thereon under the terms of the Carey Act and the laws of the state of Idaho. Prior to 1918, and while the project included 60,000 acres, respondents made proof of the reclamation, improvement and cultivation of the lands, and received final certificates from the state of Idaho. It was thereafter demonstrated that the source of water supply was not sufficient to make available enough water for the irrigation of all the lands under the said project. The state of Idaho made certain investigations, and determined, on or about March 30, 1918, that the project should be reduced to approximately 35,000 acres, and recommended to the Secretary of the Interior that patents be issued to all the lands embraced in such reduced area, and that patents not be issued to the lands excluded from the project. Accordingly, the Secretary of the Interior reduced the project to approximately 35,000 acres of irrigable land, and on January 13, 1921, patent from the United States issued to the state for the lands

embraced in the reduced area. The lands of respondents are located within the reduced area, and before the reduction of the project there was not sufficient water allotted to them to irrigate them adequately for the successful growing of crops.

In the year 1918, and every year since, the premises filed on by respondents were assessed by Twin Falls county for taxation as real property, and such assessment extended upon its real property rolls as delinquent taxes against the property. The taxes assessed for the year 1918 are delinquent. The delinquency entries are owned by Twin Falls county, and the time of redemption from tax sale expired January 13, 1922. Judgment was entered enjoining the issuance of tax deeds on delinquent taxes for the year 1918 or any other year prior to 1921. This appeal is from that judgment.

The appellants assign as error that the findings and conclusions are not supported by the evidence, the law or the pleadings, and that the court erred in its conclusions that the final certificate issued by the state of Idaho to respondents did not vest the equitable title to said lands in respondents, and that respondents were entitled to an injunction against the issuance of a tax deed on account of taxes delinquent for the year 1918 or for any other year before 1921.

The court's conclusion that equitable title did not vest in the respondents is based upon a deduction drawn from the provisions of the Carey Act and the laws of Idaho passed to carry it into effect, and especially that after the land and water company was prepared to furnish sufficient water for the complete irrigation of the 35,000 acres, it became the duty of the company to notify the settlers to that effect, that within three years thereafter the settler would be required to appear before the Department of Reclamation and make final proof of reclamation, settlement and occupation, and that until these conditions were complied with, the final state certificate or patent could not issue legally.

The court was correct in its conclusion of law, from all the facts, that equitable title did not vest upon the issuance of the certificates. The facts with relation to the certificates,

and the lack of proof of the completion of the project, show that title did not vest, but it was unnecessary to conclude that the certificates could not issue legally at the time they did. That point is not necessary to the decision herein. The state, probably a very necessary party to such determination, was not before the court. The legality of the certificates, in and of themselves, was not a material issue, but only their legal effect under the facts stipulated. It is stipulated that the patents have since issued to the state, and while the settler did not receive an equitable title upon this final certificate, because the facts show that some of the things which it was necessary for him or the state to do to secure patent were not established, yet the issuance of a certificate to him would estop him from claiming, as between himself and the taxing authority, that he had not performed all of the legal requirements for its issuance or that the equitable title had not vested in him for the purpose of taxation, if, upon consideration of all the other facts, it would so vest as a matter of law. (*Bothwell v. Bingham County,* 24 Ida. 125, 132 Pac. 972, 237 U. S. 642, 35 Sup. Ct. 702, 59 L. ed. 1157.)

This court and many others, including the supreme court of the United States, have determined that when an entryman upon public lands has done all that was required of him by the federal laws and the rules and regulations of the Department of the Interior to earn title, and a final certificate has been issued to him by the Secretary of the Interior, or, in other words, when the proceedings for the acquisition of the title have reached the point where nothing more remains to be done by the entryman, and the government no longer has any beneficial interest in the land and does not exclude the entryman from the use of it, he is regarded as the beneficial owner and the land as subject to taxation, even though the duty of passing the legal title to him has not been discharged. But those same cases and many others are authority for the converse of that rule, that so long as something remains to be done to divest the government of its beneficial interest, the equitable title does not pass. (*Both-*

*well v. Bingham County, supra; Northern Pac. Ry. Co. v. Myers,* 172 U. S. 589, 19 Sup. Ct. 276, 43 L. ed. 564. See, also, *Irwin v. Wright,* 258 U. S. 219, 42 Sup. Ct. 293, 66 L. ed. 573, where many of the decisions are collated.)

But the vesting of equitable title in the entryman does not depend alone upon his compliance with the state law and the issuance of a state certificate to him. Such a state certificate only establishes his compliance with state requirements, and does not supply the proof necessary to be made to the Interior Department by the state, or have the dignity of a final certificate issued by the Secretary of the Interior. The action of the Secretary of the Interior in approving the proposed plan for the irrigation of the lands applied for by the state, and in making the order segregating those lands from the public domain, was not a conclusive determination, against the United States, that the state of Idaho was entitled to patent therefor for the benefit of the settlers. (*State v. Twin Falls Salmon River Land & Water Co.,* 30 Ida. 41 (78), 166 Pac. 220; *Twin Falls Salmon River Land & Water Co. v. Caldwell,* 242 Fed. 177, 155 C. C. A. 17.)

The state stands in the nature of a trustee, and the entryman makes his entry with full knowledge of the law and the relation. (*Twin Falls Salmon River Land & Water Co. v. Caldwell, supra.*) His right to an equitable title is dependent upon the making of full and final proof of compliance, not only by himself but by the state, with the requirements of the Carey Act and the regulations of the Department of the Interior, and the approval of the Secretary of the Interior.

The stipulation recites that the contract with the United States government called for satisfactory evidence to be furnished to the Secretary of the Interior that sufficient water was available to irrigate all the lands under the project and that said lands had been successfully irrigated and reclaimed, and provided that thereupon the Secretary of the Interior would cause patents to be issued to the state for all the lands, and that the state was to issue patents to the settlers.

There are two provisions of the Carey Act under which patent may issue, one of which is the following:

"As fast as any State may furnish satisfactory proof according to such rules and regulations as may be prescribed by the Secretary of the Interior, that any of said lands are irrigated, reclaimed and occupied by actual settlers, patents shall be issued to the State or its assigns for said lands so reclaimed and settled. . . . . " (28 Stats. L. 422; 8 Fed. Stats. Ann., 2d ed., 699.)

The other is this:

" . . . . When an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim a particular tract or tracts of such lands, then patents shall issue for the same to such State without regard to settlement or cultivation. . . . . " (29 Stats. L. 434; 8 Fed. Stats. Ann., 2d ed., 701.)

However, the fact that, under the Carey Act and the contract involved, proof might or might not have been made to entitle the state or entryman to patent in separate tracts and before final completion of the project is not involved herein, for no such proof was offered, made or approved.

It is not stipulated when the state made proof to the Department of the Interior or when the Secretary of the Interior approved such proof. But under the recital of the stipulation that it was after March 30, 1918, that it was determined that the project be reduced, it is a fair inference that up to that time there had been no proof or determination that there was "an ample supply of water . . . . actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim a particular tract or tracts of such lands," or "that any of said lands are irrigated, reclaimed and occupied by actual settlers." Until such proof was made and approval obtained, there remained a beneficial interest in the federal government, and it held not only the legal but the equitable title. In reality, the facts did not exist to warrant the proof or approval when these lands were assessed in 1918.

Were it not for the recent decision of the supreme court of the United States in *Irwin v. Wright, supra,* the stipulation that the lands were assessed to respondents as real property and to be sold as such might have led to a conclusion that the respondents had a property right and interest in the land which could be assessed and sold as real property.

C. S., sec. 3101, provides that "Real property for the purposes of taxation shall be construed to include land, . . . . all buildings, structures and improvements, or other fixtures of whatsoever kind on land, . . . . and all rights and privileges thereto belonging, or in anywise appertaining. . . . . "

The constitution of Idaho (art. 7, sec. 4) contains the following words: "The property of the United States . . . . shall be exempt from taxation."

A clause substantially identical is found in C. S., sec. 3099.

The constitution (art. 7, sec. 2) also provides that the legislature shall direct that every person pay a tax in proportion to the value of his property. All property, unless specifically exempted, is subject to taxation, and one claiming an exemption must be able to point out precisely wherein his property has been made exempt. (*Bothwell v. Bingham County, supra.*)

C. S., sec. 3016, speaking of a Carey Act entry, provides: "Any such entry may be devised or shall descend as other real estate."

Many adjudicated cases dealing with statutes similar to ours have upheld the right to define an equitable interest or right to possession, use and occupation as property subject to taxation as realty, even in the absence of equitable title to the land. (*Lewis v. Christopher,* 30 Ida. 197, 163 Pac. 916; *Cheney v. Minidoka County,* 26 Ida. 471, 144 Pac. 343; *Graciosa Oil Co. v. Santa Barbara County,* 155 Cal. 140, 99 Pac. 483, 20 L. R. A., N. S., 211; *Moeller v. Gormley,* 44 Wash. 465, 87 Pac. 507; *Bakersfield & Fresno Oil Co. v. Kern County,* 144 Cal. 148, 77 Pac. 892; *Millerson v. Doherty Land & Cattle Co.* (Mo.), 241 S. W. 907; *United States v. Canyon County* (D. C.), 232 Fed. 985.)

In *United States v. Canyon County, supra,* the taxing authorities, after a levy upon the lands of an entryman under a government reclamation project whose rights were not entirely perfected and who had yet to make a proof that at least one-half of the irrigable area of the entry had been reclaimed, made an amendment purporting to tax only the equity or interest of the taxpayer. Judge Dietrich refused to consider what was accomplished by that attempt, but held that such settler had an interest subject to assessment and sale and that that was all that was attempted to be sold, and specifically provided in his decree that the interest of the settler only be sold, and that the sale be no encumbrance or lien upon the undetermined interest of the federal government in the land. This court, in *Cheney v. Minidoka County, supra,* under very similar facts, arrived at the same conclusion.

But *Irwin v. Wright, supra,* a case wherein no attempt was made to make a tax a lien upon the government's interest in or title to lands, has flatly determined that except as to mining claims, and except "in cases in which express authority to tax is given by statute," states have no right to define and tax as property the interest of an entryman upon government lands before the equitable title passes. It expressly disapproves of those portions of the opinions in *United States v. Canyon County, supra,* and *Cheney v. Minidoka County, supra,* holding that the interest of the entryman was property and subject to state taxation as such.

*Elder v. Wood,* 208 U. S. 226, 28 Sup. Ct. 263, 52 L. ed. 464, dealt with the taxation of a mining claim, and makes the distinction well recognized in other cases that the land in a mining claim unpatented is not assessed, that the location is property distinct from the land itself, and that what was assessed was not the land but the claim.

*Irwin v. Wright, supra,* in treating of the contention that the only thing assessed and sought to be sold was the interest of the entryman in the lands, and in distinguishing this class of entries from mining claims and from the rule announced in *Elder v. Wood, supra,* uses this language:

40 Idaho—39

"The argument is that this puts such an interest as the entryman has in the lands in the same category as mining claims, which have always been taxable. (*Elder v. Wood,* 208 U. S. 226, 28 Sup. Ct. 263, 52 L. ed. 464.) We do not think that mining claims present a convincing analogy. The basis of the mining interest is discovery and location. These give full opportunity to the locator of the claim to take out the mineral, and since the beginning, this right and interest never has been dependent for its enjoyment on patent, and so it has been taxable. (*Forbes v. Gracey,* 94 U. S. 762, 24 L. ed. 313, 14 Morr. Min. Rep. 183.) The rule has always been different in respect to other public lands, as the numerous decisions of this court, cited above, show."

That case treated of an entry under a government reclamation project, and, speaking of the purposes and objects of the government, and of remedial legislation passed to carry them into effect, says:

"The government incurs heavy liability in providing water for these lands. It relies on the entryman to reclaim them, thus finally achieving its sole object of adding arid tracts to the productive area of the country. In pursuit of this purpose, it has found the requirement that the entryman shall pay all his apportioned cost of the irrigation work before he gets title too burdensome; and, as we have seen, the sum has been spread in instalments over twenty years, and his title is given him after he has reclaimed the land and paid the few early instalments due at that time. The Act of 1910 does not purport to subject these lands to taxation while the title is at yet unearned, and its terms show that it is not intended to permit anything beyond what fairly falls within its express provisions. . . . . To construe this remedial legislation, including the Act of 1910, which is only intended to lighten the task of the entryman in reclaiming the land and acquiring title, so as to impose on him the new burden of state taxation, is contrary to its plain policy. We think, therefore, that the reason for the rule, making the acquisition of the equitable title the line between nontaxability and taxability, is stronger in case of reclamation home-

stead entrymen than in the instances where, before the Recla-
mation Act, it always applied. Moreover, the confusion
caused in the past by the taxation, when specifically per-
mitted, of indefinite and inchoate interests of the benefi-
ciaries of government land grants, should prevent an infer-
ence of the congressional intention to depart from the rule
requiring an equitable title in the entryman before state
taxation, unless a purpose to permit earlier taxation is ex-
press or strongly implied.

"It is argued that it is not government · property which
is sought to be taxed here before final certificate, but only
the interest of the entryman. In the case at bar, the taxes
were, in the first instance, assessed against the land, but
later the board of supervisors changed the form of the assess-
ment so as to insert the word 'equity' in the record. The
power of the supervisors, under the Arizona statutes, to
order such a change in past assessments, is challenged. We
do not think it necessary to decide this. It is enough to say
that the entrymen did not have the equitable title until they
received the final certificate, and their interest in the gov-
ernment's land, until that issued, was, for the reasons given,
not taxable. Whether an interest like that of the entrymen
in land not belonging to the government would be taxable
property, we have no occasion to consider."

There is no difference in principle between that case and
this one, and we must follow the late and plain decision of
the supreme court of the United States.

The decision herein that equitable title to these lands had
not vested in the entrymen, and the holding of *Irwin v.
Wright, supra,* render inapplicable any rule of estoppel urged
by appellants, or cases cited by them to support an estoppel
of respondents to impeach their title for the purpose of
avoiding payment of taxes, on the ground that they have
been in the use and possession of the lands and the full exer-
cise and enjoyment of the rights, privileges and benefits
thereof.

As to the extent of the judgment, it is our opinion that
when the state made proof to the Department of the Interior,

and when the Secretary of the Interior approved the proof for patent, and nothing of a beneficial interest remained in the federal government, the respondents had an equitable title which rendered the lands taxable. That proof may have been submitted, and approval by the Secretary may have been made, in time to validate assessments at some time subsequent to 1918 and prior to 1921. The record only proves that it had not been done prior to March 30, 1918. Until the date of approval for patent is established, it is improper to decree an injunction as to tax deeds or taxes subsequent to 1918 and prior to 1921.

It follows that the court was in error in its conclusion that the respondents were entitled to injunctive relief against tax proceedings subsequent to 1918 and prior to 1921, and that the judgment should be modified by striking therefrom the following words in the last paragraph, "or for any other year prior to 1921," and inserting in place thereof the following, "or prior to the date of approval of proof for patent by the Secretary of the Interior," and it is so ordered. As modified, the judgment is affirmed. Costs to respondents.

William A. Lee, C. J., and Givens, J., concur.

Wm. E. Lee, J., did not sit at the hearing and took no part in the decision.

BUDGE, J., Specially Concurring.—Appellants and respondents in their briefs state that there is only one question before this court, namely: Were the lands of respondents subject to taxation for the year 1918? There is a stipulation in the record setting out the facts and to the facts so stipulated we are called upon to apply the law. From the facts it appears that respondents or their predecessors in interest actually settled upon the land described in the complaint in the year 1908; that prior to the year 1908 respondents or their predecessors submitted final proof of cultivation and residence to the state of Idaho as required by law and received from the state their final certificate; that after the

issuance of said final certificate by the state the United States refused to issue patent for the land for the reason that the state was unable to furnish to the Secretary of the Interior satisfactory evidence that the lands embraced in the project were supplied with a proper system of canals and laterals and that sufficient water was available to properly irrigate all of the lands within the project, there being something like 60,000 acres in the project which was thereafter, on March 30, 1918, reduced to 35,000 acres and the water for the entire project confined to the reduced area. Thereafter the state again made application to the Secretary of the Interior for patents for the reduced area and on January 13, 1921, patent was issued therefor. Up until that time neither the state of Idaho nor the respondents had legal or equitable title to any of the lands within the project. The trial court found that the final certificate issued by the state to respondents did not pass title thereto so as to subject the same to taxation for the year 1918 and to and including the 13th day of January, 1921. This finding was correct.

The case of *Bothwell v. Bingham County*, 24 Ida. 125, 132 Pac. 972, cited by appellants in support of their contention, is in point against them. In that case final proof had been submitted to the state and subsequently, on January 9, 1911, the state received patent for the lands from the United States and upon the same day namely, January 9, 1911, the board of county commissioners of Bingham county caused taxes to be levied against said lands for the year 1911. This was upon the theory that final proof had been made by Bothwell to the state and that patent had been issued by the United States. Bothwell had an equitable title. The state had the legal title which it held in trust for Bothwell. There was no attempt to levy taxes against this land until the patent from the United States had been issued to the state. The rule would seem to be well settled that Carey Act lands are taxable when patent is issued to the state from the government and when the entryman has made final proof and earned his certificate from the state.

In my opinion it would be useless to discuss this question further than to hold that the injunction enjoining the collection of taxes against the lands of respondents for the years 1918 and to and including January 13, 1921, was properly issued and should be made permanent.