(No. 5062. April 25, 1929.)

ASHER B. WILSON, Appellant, v. TWIN FALLS COUNTY, Respondent.

[277 Pac. 1114.]

528

Asher B. Wilson and J. Paul Thoman, for Appellant.

O. W. Witham, for Respondent.

WM. E. LEE, J.—██ This is an action to recover the sum paid for void delinquency (tax) certificates. Prior to 1914, several thousand acres of land in Twin Falls County were set aside for the purpose of reclamation under what is generally known as the Carey Act. As disclosed in *Leney v. Twin Falls County*, 40 Ida. 600, 236 Pac. 532, the county began to levy taxes on lands within the project before they became taxable, and "Judgment was entered enjoining the issuance of tax deeds on delinquent taxes for the year 1918, or any other year prior to 1921." The failure to pay the taxes levied on certain lands within the Carey Act project for the year 1914, resulted in the issuance of the delinquency certificates, which were sold and assigned to plaintiff, appellant here, who also redeemed other delinquency certificates issued on account of the failure to pay taxes subsequently levied on the same lands. On December 23, 1921, plaintiff filed his "petition" with the board of county commissioners for a refund of the moneys paid for the delinquency certificates, together with interest. However, no action was taken by the board until after the decision in the Leney case, when, on February 17, 1926, it ordered, " . . . . that all taxes and charges outstanding at this time against said above described lands prior to the year 1921, be and the same are canceled and annulled, avoided, and set aside in conformity to and in compliance with . . . . " the decision of this court in *Leney v. Twin Falls County*. On May 20, 1926, plaintiff filed a "supplemental petition" for a refund of the sums paid by him on account of the purchase and foreclosure of the delinquency certificates and interest. The supplemental petition was denied on July 19, 1926, and

this action was instituted December 20, 1926, for the recovery of the moneys expended for and or account of the purchase and foreclosure of the delinquency certificates and interest. The county filed its answer, pleading one of the statutes of limitation (C. S., sec. 6611, subd. 1), as a bar to a recovery. After trial to the court, judgment was entered for the county and plaintiff appeals.

It is the position of the county that the cause of action on appellant's claim against the county commenced to run when he purchased the delinquency certificates, or, in any event, as determined by the trial court, not later than December, 1921, when the first petition was filed. Appellant, however, contends that the statute did not commence to run until February 17, 1926, when the board canceled and set aside the taxes on account of which the delinquency certificates were issued.

Chapter 58, 1913 Session Laws, was in force when the delinquency certificates were issued. Section 121 thereof sets forth the form of a delinquency certificate, and each of the certificates held by plaintiff contained a provision "that if, on account of any irregularities of the taxing officers, this certificate be void," the board of county commissioners "will" repay to the owner the sum paid for the certificate, with interest. Section 206, of chapter 58, set up the board of county commissioners as a special tribunal, with jurisdiction to determine if any delinquency certificate was void, on account of any irregularity of the taxing officers. If they determined that a certificate was void, the statute made it their duty to make repayment. (*Hayes v. Los Angeles County,* 99 Cal. 74, 33 Pac. 766.) The board, says sec. 206, "may refund to the owner of any delinquency certificate *which has been determined by the board of county commissioners to be void . . . .* " the amount paid therefor. It would seem that *the determination of invalidity* was the fact which gave rise to a claim against the county; and whatever right the owner possessed, prior to the determination of invalidity, was inchoate, and did not ripen into a claim against the county until it was determined that the certifi-

cates were void. Appellant, as the holder of delinquency certificates, had no claim against the county, which he was required to present for payment until the board of county commissioners made its order, canceling and setting aside the taxes it had theretofore levied against the lands with respect to which his certificates were issued, and it was not until then that the statute commenced to run. Within one year after the board made its order, appellant had filed his duly verified claim (C. S., sec. 3506), and it had been rejected. Within six months after its rejection (C. S., sec. 3513), this action was begun. It is our conclusion that the trial court erred in holding that the action was barred by any of the statutes of limitation.

In the case of *Easton v. Sorenson*, 53 Minn. 309, 55 N. W. 128, plaintiff brought suit against the county auditor to recover sums paid for tax certificates which were later declared void by the court. Plaintiff made his demand for repayment ten years after the judgment. The court said:

"The plaintiff's right to have his money returned was complete when the judgment was entered against him, and whether he received it promptly was a matter entirely within his control. His cause of action then accrued, although his right to maintain a suit upon this cause depended upon his taking certain preliminary steps, clearly requisite for the information of the officers and the protection of the county. . . . . The statute of limitations commenced to run against plaintiff's claim upon the county on the day judgment was entered against him."

In the case of *Sherwood v. Barnes County*, 22 N. D. 310, 134 N. W. 38, where the plaintiff sought to recover sums paid by him at tax sales, which sales had previously been set aside by judgment of a district court, the court said:

"We conclude . . . . that action by the board of county commissioners was a prerequisite to the issuance of a warrant by the county auditor in favor of respondent. Until the action of such board, the fund would lie in the county treasury subject only to a demand on the part of respondent; and the only officials who could act upon such demand

were the county commissioners as a board. . . . . The county commissioners rejected respondent's claim. Until such rejection he had no ground for action. It therefore appears to us that the cause of action arose on the rejection of his demand. . . . . And, where a claim against a county must be presented for allowance before suit, the statute of limitations does not run against such claim until its presentation and rejection by the body or board to which it is necessary to present the claim.''

In *Lawrence v. Doolan,* 68 Cal. 309, 9 Pac. 159, it was said:

''As to the statute of limitations, we think it very clear that the plaintiff had no right to bring an action for her money until it was judicially determined whether or not she was the person to whom the city would deed the land, and might take the money she had paid in to the tax collector, and apply it to the purpose contemplated by order No. 800, and the acts of the legislature, *supra.* When, in February, 1878, it was thus determined that she had no right to demand of the city a deed to the lands in controversy between her and Ballou, she could then have demanded her money, and her right of action accrued. The present action was commenced January 14, 1880, and was not barred by the statute of limitations.''

In *Merriam v. County of Otoe,* 15 Neb. 408, 19 N. W. 479, the supreme court of Nebraska said:

''It is assumed in the brief of plaintiff in error that the demurrer was sustained on the ground that the claim of the plaintiff was barred by the statute of limitations; and that, to reach that conclusion, the court held that the plaintiff's cause of action accrued immediately upon his purchase of the land. If that was the ground of the decision it cannot be sustained. In the case of *Peet v. O'Brien,* 5 Neb. 360, this court held that 'the title acquired by a purchaser at a tax sale might be said to fail when it should be pronounced invalid by the judgment or decree of a court of competent jurisdiction over the subject-matter.' Until plaintiff's title failed he had no right to call on Otoe County to hold him

harmless, etc., and it was then that the statute commenced to run.''

In the case of *Real v. Kern County*, 39 Cal. App. 723, 179 Pac. 726, the plaintiff purchased a tax title in 1911. In 1913 an action was instituted involving the validity of the tax deed. In 1916 the court decreed that the tax deed was void. In 1917 a claim for refund was filed and rejected. Action was instituted against the county, wherein it was asserted that the claim accrued when the taxes were paid and, that the right of action was barred by the statute of limitations. Section 3804 of the Cal. Pol. Code provides:

''No order for the refund of taxes, penalties or costs under this section shall be made except upon a verified claim, . . . . which, . . . . must be filed within three years after the making of the payment sought to be refunded.''

Subdivision 5 of sec. 3898 of the Cal. Pol. Code, provides:

''Whenever in any action at law, it has been or shall be determined by a court that the sale and conveyance provided for in this and the preceding section . . . . are void for any reason, and that the purchaser from the state may not be finally awarded the property so purchased. . . . . The said purchaser may within one year after such decree becomes final also present a claim against the county, in the manner provided by law, for a refund of the amount paid into the county treasury as the purchase price of such property in excess of the amount for which he may have been reimbursed for taxes, penalties and costs as herein provided, and such excess shall be refunded in accordance with section 3804 of this code.''

In considering these two sections and the effect of the provisions of sec. 3898 upon sec. 3804, and in reaching its decision in the above case, the California court said:

''Hence, assuming that the words 'refunded in accordance with section 3804,' found in section 3898, are to be construed as incorporating therein the provision in the latter section to the effect that the verified claim, in order to be effective, must be filed within three years after making the

payment, we are constrained to hold that such limitation as to time does not begin to run until the court has determined that the purchaser is not entitled to an award of the property purporting to be conveyed by a void tax deed.''

Since the law required a determination that delinquency certificates were void to give rise to a claim against the county, *Real v. Kern County* supports our conclusion. See, also, *Chicago County v. Kipp*, 70 Minn. 286, 73 N. W. 164; *Harding v. Auditor General*, 136 Mich. 358, 99 N. W. 275; *Peet v. O'Brien*, 5 Neb. 360; *White v. City of Brooklyn*, 122 N. Y. 53, 25 N. E. 243; *Kentucky Lands Inv. Co. v. Towery*, 145 Ky. 537, 142 S. W. 1071.

The conclusion that the board of county commissioners, in its order of February 17, 1926, ''referred only to delinquency certificates then owned by the county, and did not refer to plaintiff's certificates, or in any way confer any additional rights upon him,'' is not sustained by the record of the proceedings of the board. The board ordered that ''all taxes and charges,'' on certain described lands, ''be and the same are cancelled, and annulled, avoided and set aside.'' The lands described in appellant's delinquency certificates are included in the description of the lands declared to have been illegally taxed, and it would be unreasonable to conclude that appellant's certificates were not affected by that order. From the declaration of the board that the taxes, on account of the nonpayment of which, appellant's certificates were issued, were void, it followed that the certificates, based on such void levy, were also void.

Respondent's argument that these delinquency certificates were not void ''on account of any irregularity of the taxing officers'' is not well taken. The levy of taxes on lands exempt from taxation is an irregularity that renders delinquency certificates based thereon void. (*Knapp v. Douglas County*, 100 Wash. 125, 170 Pac. 559; *Connor v. Spokane County*, 96 Wash. 8, 164 Pac. 517; *School Dist. No. 15 v. Commrs. of Allen County*, 22 Kan. 396, 29 Pac. 396.)

■ The costs expended by appellant in foreclosing his delinquency certificates cannot be recovered. The right to any recovery is based entirely on the provisions of the statutes hereinbefore referred to, and the obligation of the county is therein limited to a refund of the amount paid for the certificates, together with interest. (*Creason v. Douglas County,* 86 Or. 159, 167 Pac. 796; *Wheeler v. State,* 190 N. Y. 406, 123 Am. St. 555, 83 N. E. 54; *Keyes v. State,* 121 Me. 306, 117 Atl. 166.)

The judgment is reversed and the cause is remanded with instructions to make and enter judgment in favor of appellant, and against the county in accordance with the views herein expressed.

Budge, C. J., and Givens and Varian, JJ., concur.