(No. 7192 February 22, 1945)

JOHN T. SHEA, Respondent, v. OWYHEE COUNTY, Appellant.

(156 P. 2d 331)

160

Milo Axelson for appellant.

Anderson & Leguineche for respondent.

MILLER, J.—This action was instituted February 4, 1942, to recover judgment against Owyhee County, defendant-appellant, on account of payments made by plaintiff-respondent of principal, interest and taxes paid on a contract of sale of real property, situate, lying and being in Owyhee County, Idaho. The facts leading up to and necessitating the institution of said action, briefly stated, are as follows: May 4, 1932, Owyhee County, by and through its proper officials, entered into a contract for the sale of certain real property to respondent, John T. Shea. The title to the real property had been acquired by said county through a tax deed for delinquent taxes. The contract of sale provided for an initial payment and annual installments with interest on the unpaid balances, together with the payment of all taxes and assessments after January 1, 1933. Respondent made certain payments on the principal, interest and taxes which were accepted by appellant in accordance with the contract. April 7, 1936, Kathleen W. Kivett, the owner of the real property at the date of the

issuance of the tax deed to appellant, commenced an action in Owyhee County to have said tax deed adjudged void and said contract of sale to respondent declared invalid. In said action Owyhee County, John T. Shea and Myrtle H. Shea were made defendants. On the trial of said action the trial court, on October 2, 1936, entered its decree denying the relief prayed for by Kathleen W. Kivett, and adjudged that Owyhee County, John T. Shea and Myrtle H. Shea were entitled to the exclusive possession of said real property. Said case was appealed to this court, and on November 26, 1937, the action of the trial court was reversed (*Kivett v. Owyhee County, et al,* 58 Ida. 372) and remanded. June 10, 1941, the action was finally determined and the tax sale to the county and contract of sale to Shea were held to be void and Kathleen W. Kivett decreed to be the owner.

October 2, 1941, respondent filed with the board of county commissioners a claim for a refund and repayment of the amounts he had paid on the purchase price of the real property, with interest and tax payments. On October 4, 1941, the commissioners rejected said claim, thereby necessitating this action. February 26, 1942, appellant filed a special demurrer, which was overruled September 19, 1942. September 30, 1942, an answer was filed and on May 6, 1943, an amended answer was filed. May 7, 1943, an agreed statement of facts was signed by attorneys for respective parties to which was attached a copy of the contract of sale, marked Exhibit "A". The amounts paid on said contract, interest and taxes, correspond to the amounts set out in respondent's complaint. January 12, 1944, a stipulation, signed by respective counsel, was filed, and therein it is agreed that if any judgment is entered by the trial court it shall include not more than the amounts therein mentioned. The amounts mentioned in the stipulation agree with those designated in the complaint and agreed statement of facts, except as to the tax payments, which are $148.28 less. On January 12, 1944, the trial court entered its judgment, based upon the amounts agreed upon in the stipulation, in the sum of $1,678.23, with interest thereon at 6% per annum, and costs amounting to $11.40. March 18, 1944, notice of appeal from the judgment was filed.

The specifications of error assert (1) That the court

erred in overruling the demurrer, (2) in entering judgment for the refund of payments made under the contract, (3) in entering judgment for the taxes paid by respondent, and (4) in entering judgment against appellant. The first point urged by appellant is as follows: "Questions concerning rights of a purchaser at a tax sale are to be determined by law in force at the time sale is made, which law enters into and becomes a part of the contract." The sale was made under the provisions of section 30-708, I.C.A., which authorizes a board of county commissioners, either for cash or upon such terms as the board may determine, not exceeding five years, to sell real or personal property belonging to the county, not necessary for its use, at public auction, at the courthouse door, after thirty days' previous notice given by publication.

At the time of executing the sales contract (May 4, 1932) section 61-1902, I.C.A., among other things, provided: "The board of county commissioners may, at any time when in session, cancel taxes which for any lawful reason should not be collected, and may refund to any taxpayer any money to which he may be entitled by reason of a double payment of taxes on any property for the same year, or the double assessment, or erroneous assessment of property through error, and may refund to the owner of any delinquency certificate which has been determined by the board of county commissioners to be void on account of any irregularity of the taxing officers, the amount paid on the sale of such certificate by the county, with interest thereon from the date of such payment at the rate of six per cent per annum: * * *." Section 61-1902, supra, was amended by Chapter 198, Sess. Laws 1933, effective March 13, 1933, by further providing: "* * * and may refund to the purchaser of any property erroneously sold when it has been determined by the Board of County Commissioners that such sale is void on account of any irregularity of the taxing officers or that the property purchased has been erroneously sold or the sale thereof invalid, the amount paid by such purchaser to the county on the sale of such property, with interest thereon from the date of such payment at the rate of six per cent per annum."

Appellant admits it was a void sale, but contends that because the amendment of 1933 providing for a refund was not in effect at the time of executing the contract of

sale it was discretionary with the board of county commissioners as to the approval or rejection of such refund, and in support of such contention cites as its leading authority the case of *Larson, et al, v. Gilderoy*, 45 Ida. 764, 267 P. 234. The facts in the Larson-Gilderoy case disclose that two tax deeds were issued to the county January 14, 1922, and April 17, 1922, for taxes assessed against certain lands for the year 1918, and that Larson, et al, acquired the tracts by purchase from Washington County, and deeds thereto were executed by the county to Larson, et al, June 7, 1926, and August 6, 1926. It is further alleged that taxes were assessed against the lands for the years 1919, 1920 and 1921, which have not been paid, and that notwithstanding the issuance of the deeds, Gilderoy, as treasurer and tax collector of Washington County, threatens that unless said taxes for the years 1919, 1920 and 1921 are paid he will execute tax deeds to such lands to Washington County. In disposing of the question, the court held:

"The sale of land for the taxes of one year does not, in the absence of statute to the contrary, affect the liability of the land sold for taxes of a later year and assessed prior to such sale. The parcels of land sold by Washington County to appellants were duly and regularly assessed for state, county and municipal taxes for the years 1919, 1920 and 1921, prior to the sale to the county of the tracts by reason of the delinquency or failure of the then owner or owners to pay the taxes of 1918."

The question of the sales being invalid or for a refund is not involved and the Larson-Gilderoy case, supra, is not in point. (See, also, *Bauer v. Cassia County, et al*, 47 Ida. 680, 277 P. 1111.) Examination of other authorities cited by appellant discloses that they have no relationship to tax sales or refunds and are not applicable in the instant case.

The second point urged by appellant is as follows: "Purchaser of defective title at tax sale, in absence of statutory authority, buys at his peril, cannot recover money paid, and rule of 'caveat emptor' applies." The leading case cited by appellant is *Grimes v. Raney*, 104 Kan. 109, 178 P. 251. The facts in said case are as follows:

"In 1890 Stanton County erroneously placed certain government land upon its tax rolls, and in 1895 issued a

tax deed purporting to convey the land to the grantee named therein. Plaintiff, who succeeded to the grantee's rights, presented her claim against the county asking reimbursement for the amount of the taxes paid and interest, the claim aggregating $126.54. The claim was rejected, and she brought this action against the county. The court sustained a demurrer to the petition, and the only question involved is whether the allowance of such a claim is a matter of discretion with the board of county commissioners."

The statute prior to 1879, among other things, read:

"If, after the conveyance of land sold for taxes, it shall be discovered or adjudged that the sale was invalid, the county commissioners shall cause the money paid therefor on the sale and all subsequent taxes and charges paid thereon by the purchaser or his assigns, to be refunded, * * *".

The case then quotes from other Kansas cases in which it is stated that the statute as amended "leaves no doubt that the law makes it a matter of discretion in the board * * * whether they will cause the refund to be made or not, * * *".

It is then stated:

"These expressions of the court, while not controlling, are persuasive. It is hardly conceivable that the Legislature changed the wording of the statute with any other intention than to make the matter of an allowance of a claim of this character entirely discretionary with the board. If there is any way possible, the plaintiff ought to be allowed to recover money paid through a mistake of this kind and unjustly retained by the county. But the Legislature has not always proceeded upon the theory that the state and its various subdivisions should do justice. Frequently, Legislatures are impressed with the advisability of preventing, rather than encouraging, the allowance of claims against the state, however meritorious.

"Stanton county has in its hands funds belonging to the plaintiff, paid under a mistake of the county, and which the county has no right to retain. The statute as amended no longer requires the board of county commissioners, in passing upon such a claim, to do what is right and fair; it merely declares that the county may refund the money

it unjustly holds as the commissioners 'may judge proper'. * * *"

In the case of *Hayes v. Los Angeles County* (Cal.), 33 P. 766, construing a similar statute, syllabus 2 recites:

"The word 'may', in said section, means 'shall'; and, thus construed, the board having no discretion to allow or reject a claim for taxes actually paid a second time, on a refusal to allow such claim, action therefor lies against the county, without also making the state party defendant."

In the body of the decision, it is held:

"It is urged by respondent that the Code, by providing that the board of supervisors may by order provide for refunding taxes, etc., paid more than once, made it optional with that body whether to do so or not, and that the board, in this instance, having refused to refund, its action is conclusive upon the plaintiff. Where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall'. (*People v. Supervisors of Livingston Co.*, 68 N.Y. 119.) Where the statute directs the doing of a thing for the sake of justice, or the public good, the word 'may' is the same as the word 'shall'. (*Rex v. Barlow*, 2 Salk. 609.) Where a statute directs a thing to be done for justice's sake, 'may' means 'shall'. (*Silvey v. U. S.*, 7 Ct. Cl. 334.) Where persons or the public have an interest in having the act done by a public body, 'may', in such a statute, means 'must'. (*Phelps v. Hawley*, 52 N.Y. 27; *People v. Supervisors of Otsego Co.*, 51 N.Y. 401. See *Estate of Ballentine*, 45 Cal. 696.) In *Supervisors v. U. S.*, 4 Wall. 435, a statute of Illinois provided that the board of supervisors 'may, if deemed advisable, levy a special tax', etc. Mr. Justice Swayne sums up the authorities on the question as follows: 'The conclusion to be adduced from the authorities is that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled

to invoke its aid, and who would otherwise be remediless.' Applying the rule enunciated in the foregoing cases, and it is apparent that a sound and just rule of construction requires the permissive word 'may', in section 3804, supra, to be construed as 'shall'."

The *Grimes v. Raney* case, supra, places its holding on grounds of "Legislative intention", but in view of the criticism in said case and of the innumerable decisions to the effect that "Where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall' ", such holding would seem unjustified.

To hold the statute (section 61-1902) discretionary rather than mandatory would sanction practices not in harmony with equitable principle. In other words, there would be nothing to prevent boards of county commissioners from approving and allowing claims and refunds in some instances while rejecting and disapproving claims and refunds in other instances, and irrespective of the merits of the claims involved.

The Kansas statute was revived in 1923 and, with slight changes in the title, in 1935. It was repealed in 1941 and re-enacted as section 79-2804C, and now shows that if it "be adjudged that the sale on foreclosure was invalid or void, the board of county commissioners shall by proper order cause the money paid therefor on the sale, together with such subsequent taxes and charges paid thereon by the purchaser or his assigns to be refunded, * * *".

Other cases cited by appellant which refer to the rule of "caveat emptor" are *Larson v. Peppard* (Mont.), 99 P. 136, in which it is said:

"The assessment and sale of property for delinquent taxes is a proceeding in invitum. The purchaser at such sale buys at his peril, and the rule of caveat emptor applies (*Birney v. Warren*, 28 Mont. 64, 72 P. 293) ; but the mere fact that the rule of caveat emptor applies is not any ground for relieving the land owners from the payment of burdens for which the land was in fact responsible, without first requiring such land owners to do that which they ought to have done. 'The owner comes into a court of equity, asking that he be relieved from tax proceedings,

which he claims to be illegal. Before his prayer should be granted, he should do equity himself and reimburse the tax purchaser.' (*Powers v. First National Bank*, 15 N. D. 466, 109 N.W. 361.")

In *Mitchell v. Minnequa Town Co.* (Colo.), 92 P. 678, cited by appellant, it was said:

"It is well settled that the maxim 'caveat emptor' applies to the purchaser at a tax sale; and if he fails to secure good title to the property he attempts to purchase because of invalidity of the tax sale, he cannot recover the amount paid therefor unless some statute in terms provides such remedy. We have no such statute, * * *."

In the case of *Board of County Commissioners of Washington County v. Lavington* (Colo.), 14 P. (2d) 493, cited by appellant, it is said:

"Section 7447, supra, is expressly limited to taxpayers. Tax purchasers can claim nothing under it. Counsel for Lavington say the rules should be equally liberal for both. Perhaps, but the Legislature makes the rule and it has seen fit to differentiate.

"Since no statute relieves Lavington's purchase from the applicability of the rule of caveat emptor, it is unnecessary to examine other numerous and interesting questions raised and argued by these briefs."

In the case of *Shelton v. Klickitat County* (Wash.), 277 P. 839, also cited by appellant, it is said:

"If this sale and conveyance by the County to Shelton was in legal effect a tax sale, then it seems clear that the rule of caveat emptor stands insurmountably in the way of Shelton recovering from the county the purchase price; there being in this state no statute requiring any warranty in the deed of conveyance or providing for repayment of the purchase price because of any defect in the proceedings leading up to the sale or failure of title passing to the grantee by the deed."

In opposition to the contentions, made by appellant, we cite other authorities. In the case of *Real v. Kern County* (Cal.), 179 P. 726, which was an action by plaintiff to recover $1,440.82, with accrued taxes, interest, costs and penalties, paid into the county treasury of Kern County in

January, 1911, as the purchase price of certain land sold and conveyed to Real by the state on account of delinquency in the payment of taxes thereon for the year 1904, and proceedings thereafter had and taken in pursuance of law, it was said:

"Neither, to our minds, is there any merit in appellant's second proposition. As stated, no right existed in plaintiff as a purchaser of the property to have a refund of the purchase price made until the deed was declared invalid. This was in November, 1916, at which time the statute, without limitation of time in the application thereof, declared a purchaser of land from the state by tax deed entitled to a refund of the money paid therefor whenever the court determined such deed void. Plaintiff's rights, not withstanding the purported conveyance was made prior to the enactment, were to be measured by the statute as it existed when the court adjudged he was not entitled to an award of the property. The subject of the provision is the right accorded at the time of such adjudication, which right was unaffected by the fact that the purported sale was made prior to the amendment."

In the case of *Smith v. Golden State Syndicate, et al*, (Cal.), 185 P. 209, it is said:

"Appellant contends that this subdivision of section 3898 is inapplicable here, because it was added by amendment in 1913 (St. 1913, p. 560) and the tax deed under which the intervener claims is dated March 8, 1912. We are of the opinion that this statute merely affects the remedy of the purchaser of a tax title, and that it was intended to apply to all cases after its passage in which the invalidity of a tax title was judicially determined. This seems also to have been the view taken of this section by the court in the case of *Real v. County of Kern*, 179 P. 726, where it is said that, notwithstanding the fact that a purported conveyance was made prior to the enactment of this section, the rights of the purchaser of the tax title were to be measured by the statute as it existed when the court adjudged that he was not entitled to an award of the property."

The case of *Wilson v. Twin Falls County*, 47 Ida. 527, 277 P. 1114, discloses that prior to 1914, several thousand acres of land in Twin Falls County were set aside for the

purpose of reclamation under the Carey Act. The county began to levy taxes on lands within the project before they became taxable and judgment, in the case of *Leney v. Twin Falls County,* 40 Ida. 604, 236 P. 532, was entered enjoining the issuance of tax deeds on delinquent taxes for the year 1918 or any year prior to 1921. Failure to pay the taxes for 1914 resulted in the issuance of delinquency certificates, which were sold and assigned to appellant, Wilson, who also redeemed other delinquency certificates for failure to pay taxes subsequently levied on the same lands. On December 23, 1921, appellant filed his petition with the board of county commissioners for a refund of the moneys paid for delinquency certificates, together with interest. No action was taken by the board until after the decision in the Leney case, when on February 17, 1926, it ordered that all taxes and charges outstanding at said time against such lands prior to 1921, be cancelled and annulled, voided, and set aside in conformity with the decision in the Leney case. On May 30, 1926, appellant, Wilson, filed a "supplemental petition" for a refund of the sums paid by him on account of the purchase and foreclosure of the delinquency certificates and interest. The supplemental petition was denied on July 19, 1926, and action was commenced December 20, 1926, for the recovery of the money expended for and on account of the purchase and foreclosure of the delinquency certificates and interest. The county answered pleading one of the statutes of limitation (C. S. 6611, subd. 1) as a bar to recovery. After trial to the court, judgment was entered for the county and plaintiff appealed. On appeal the judgment was reversed, and the cause remanded, with instructions to enter judgment in favor of appellant and against the county. Numerous authorities are cited. Referring to the *Real v. Kern County* case, 39 Cal. App. 723, 179 P. 726, the Idaho Court said:

"* * * the plaintiff (Real) purchased a tax title in 1911. In 1913 an action was instituted involving the validity of the tax deed. In 1916 the court decreed that the tax deed was void. In 1917 a claim for refund was filed and rejected. Action was instituted against the county, wherein it was asserted that the claim accrued when the taxes were paid and that the right of action was barred by the statute of limitations. Section 3804 of the Cal. Pol. Code provides: 'No order for the refund of taxes, penalties or costs under this section shall be made except upon a verified claim* * *

'which * * * must be filed within three years after the making of the payment sought to be refunded.' "

After referring to sections of the California Political Code, the Idaho Court says:

"In considering these two sections and the effect of the provisions of section 3898 upon section 3804, and in reaching its decision in the above case, the California Court said: 'Hence, assuming that the words ' ' refunded in accordance with section 3804," found in Section 3898, are to be construed as incorporating therein the provision in the latter section to the effect that the verified claim, in order to be effective, must be filed within three years after making the payment, we are constrained to hold that such limitations as to time does not begin to run until the court has determined that the purchaser is not entitled to an award of the property purporting to be conveyed by a void tax deed.'

"Since the law requires a determination that delinquency certificates were void to give rise to a claim against the county, *Real v. Kern County* supports our conclusion. See, also, *State v. Kipp,* 70 Minn. 286, 73 N.W. 164; *Harding v. Auditor General,* 136 Mich. 358, 99 N.W. 275; *Peet v. O'Brien,* 5 Neb. 360; *White v. City of Brooklyn,* 122 N.Y. 53, 25 N.E. 243; *Kentucky Lands Inv. Co. v. Towery,* 146 Ky. 537, 142 S.W. 1071."

Appellant in its brief says:

"The suit of *Kivett v. Owyhee County, John T. Shea and Myrtle H. Shea,* the files of which are in evidence in this action, reveal that Kivett asked for an accounting as well as to have the sale set aside, and that there was such an accounting between John T. Shea, respondent herein, and his wife Myrtle H. Shea and Kivett, and if any cause of action would lie for the recovery of those taxes it would be as between those parties and not with the County."

The stipulation makes no such contentions. The amount therein agreed upon is the amount the trial court should award if it found for respondent. The question is disposed of in the case of *Coleman v. Los Angeles County* (Cal.), 182 P. 440. Syllabus 6 thereof recites:

"Under Pol. Code, sec. 3898, subd. 5, as amended by

St. 1913, p. 560, the amount to be paid by the county to a purchaser of land for taxes who has been unable to maintain his title in litigation is fixed by the law, not by the decree in the litigation between the owner and the purchaser at the tax sale, a litigation to which the county is not a party, so that the decision of the court as to the amount payable from the property owner to the purchaser is not conclusive on the county."

In the decision it is held:

"In the foregoing discussion we have assumed, and now hold, that the amount to be paid by the county is fixed by the law, not by the decree in the litigation between the owner and the purchaser at the tax sale. The county is not a party to that litigation. It was no doubt intended that the county should act upon the adjudication of the court so far as the invalidity of the tax sale was concerned, for this is a matter of indifference to the county. But the question as to whether or not the court has therein correctly determined the amount payable from the property owner to the purchaser is one, we think, that is not conclusive upon the county. In other words, we hold that the language of the statute requiring a refund from the county of the portion of the purchase price 'in excess of the amount for which he may have been reimbursed for taxes, penalties and costs as herein provided' should be read in effect as though the language were "for which it is herein provided that he shall be reimbursed by the property owner,' or 'for which he should be reimbursed for taxes, penalties and costs as herein provided.' That is to say, we think that the statute itself, rather than the decree of court, fixes the amount to be paid by the county and by the property owner."

Since it appears that the right of a purchaser for a refund does not accrue until it has been finally determined that the delinquency certificate, contract of sale, or tax deed is invalid and void, it follows that the statutory law in force at the time of such determination is applicable; that the rule of caveat emptor is not applicable if there is statutory provision for refund; that the payment of the purchase price and subsequent taxes are not voluntary payments so as to defeat recovery when application for refund is properly made; that the statute of limitations does not

begin to run until after the right of refund and recovery accrues; that section 61-1902, as amended in 1933, was applicable at the time respondent filed his claim for refund; that a forfeiture of payments of a void or invalid tax sale cannot be declared until after determination that the sale is void, and that there were no laches on the part of respondent so as to bar a recovery against appellant.

The judgment of the trial court is affirmed. Costs awarded to respondent.

Ailshie, C.J., and Budge, Givens and Holden, JJ., concur.